## CUNNINGHAM v. UNITED STATES.
### No. 6960.

Circuit Court of Appeals, Fifth Circuit.
Nov. 27, 1933.

Y. D. Mathes and Orrin H. Bonney, both of Houston, Tex., for appellant.

Douglas W. McGregor, Asst. U. S. Atty., of Houston, Tex., and Chas. R. Guinn, Atty., Veterans' Administration, of San Antonio, Tex., for the United States.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant, claiming for her ward "automatic insurance" benefits extended by section 401, Act of October 6, 1917 (40 Stat. 409),[1] brought this suit to compel their payment. The United States resisted the suit as wanting in jurisdictional basis, and also as without basis in fact. The point was made that claims for automatic insurance were not in their nature suable because founded not on contract but on bounty, and no provision had been made for suit on them. It was further contended that if the claim be considered one under a contract of insurance and suable under World War Veterans' Act 1924, § 19, as amended by Act March 4, 1925, section 445, title 38, USCA, still plaintiff could not sue because of failure to prove the disagreement required by the act as a prerequisite to suit.

The district judge ruled these points against the government, but, the evidence in, sustained its position that plaintiff had not made out a case on the facts, by giving the general charge in its favor. This appeal resulted.

The United States here vigorously renews its contentions on the jurisdiction. We take them up in order before addressing ourselves to appellant's complaint that she has been wrongfully deprived of the right to a jury verdict.

The first is untenable on its face. It is true that the grant is a gratuity in the sense that no premium is exacted of the soldier whose case it fits; but this is the only sense in which it is true. What is granted is a contract of insurance, having in all other respects than the requirement of premiums the same

[1] "Any person in the active service on or after the sixth day of April, 1917, who, while in such service and before the expiration of one hundred and twenty days from and after such publication, becomes or has become totally and permanently disabled or dies, or has died, without having applied for insurance, shall be deemed to have applied for and to have been granted insurance, *payable to* such person during his life in monthly installments of $25 each."

incidents, entitling the holder to the same rights and remedies, and governed by the same rules as contracts of insurance issued on applications and with the payment of premiums. The place where the language is found, the fact that it is an integral part of the act granting war risk insurance, the language itself "any person * * * shall be deemed to have applied for and to have been granted insurance," under the plainest principles of statutory construction compels this conclusion. Any other would do the greatest violence to the act. Indeed, the matter is so plain that the suability of these contracts has been assumed without question. United States v. Carlson (C. C. A.) 44 F.(2d) 5; Caprio v. United States (C. C. A.) 45 F.(2d) 520, 521.

█ The government's second point, that plaintiff has failed to prove the existence of the disagreement which is a necessary predicate to a suit, presents more difficulty. Plaintiff has been most informal in pleading and in proving this disagreement. When it is considered, however, that the disagreement claimed occurred, and this suit was filed before the amendment of July 3, 1930 (46 Stat. 992 [38 USCA § 445]) had been enacted, and when also it is considered that the United States answered the suit without pleading to the jurisdiction, and caused orders to be entered in it passing it for settlement for more than three years, and on the trial only contended, without making proof, that the officer of the Veterans' Bureau, who wrote the letter relied on as constituting the disagreement, was not authorized to disagree, we think the disagreement was at least prima facie made out. United States v. Bass (C. C. A.) 64 F.(2d) 467, 468; Falbo v. United States (C. C. A.) 64 F.(2d) 948, 949; Straw v. United States (C. C. A.) 62 F.(2d) 757; United States v. Kerr (C. C. A.) 61 F.(2d) 800; United States v. Alberty (C. C. A.) 63 F.(2d) 965; United States v. Hill (C. C. A.) 62 F.(2d) 1022.

█ When, however, we come to consider plaintiff's case on the merits, we find a fatal want of proof. Asserting twelve years after her ward's two months service in 1917, that at some time within those two months a condition of total and permanent disability arose which brought into existence a contract of matured insurance, plaintiff undertook a heavy burden. She could not sustain it by proof that such a condition might have then arisen. She could sustain it only by showing "by evidence contemporaneous with that time, the then totality and permanence of her

ward's disability as a fact existing and accepted," or by showing "conditions then existing which, read in their own light, and in the light of subsequent events, make it reasonably probable that, though then unclaimed and unrecognized, total and permanent disability did then in fact exist. It is not enough that the evidence afford a basis for a possible inference that it did; it must make the inference that it did appear reasonably probable." Wise v. U. S. (C. C. A.) 63 F.(2d) 307, 308.

█ The record will be searched in vain for proof satisfying or even tending to satisfy these requirements. Nothing in the Navy medical records or testimony points to, or even remotely suggests that, the dementia præcox which several years later took plaintiff's ward was present even incipiently. Plaintiff offers generalizations of the mother, now seventy-six years of age, that after her son, a boy eighteen years old, came back from his two months' service, he acted peculiarly, some isolated instances testified to by her, of slight vagaries in his conduct, only vaguely held in memory,[2] and telescoped there now by time, the shock of the developed seizure and its consequences, and her efforts now to relate them, into the appearance of a sequence begun with and continued since his return, together with her sketchy and most incomplete account of his work record. She offers also the opinion of an expert witness that the affection her ward has is dementia præcox, a disease of adolescence, that "the condition would have begun several months before his folks began to notice it,"[3] together with his statement that nobody knows the exact cause, and that, occurring in persons predisposed and usually undersexed, any extra shock or unusual experience, like Navy discipline, might bring it about.

This same witness testified that the severe attack of influenza or pneumonia which the evidence shows plaintiff's ward had about a year after his discharge could have been an exciting factor in bringing a predisposition to a focus.

There was testimony of the mother that her son worked at various occupations in San Antonio, including three or four months at the bottling works there, where he was taken with influenza. That after convalescing from that and their return to Houston he worked

---

[2] "As to what he did when he got back to Houston I do not know. It has been so long ago. He acted very peculiarly all the time."

[3] "I do not believe I would go further than to say that in all probability this dementia began a few months before it was noticed by this boy's relatives that he was acting strangely."

at several jobs, among them laying a pipe line, and at various places, including Rusk, where in 1919 two years after his discharge, he was picked up for vagrancy and served time on a road gang. After that experience, as she testified, he did not work any more but stayed in Houston with her, until at the end of that year the symptoms appeared which caused him to be adjudged insane and hospitalized for treatment, which condition has continued ever since. It is not questioned that he is now, and since 1920 has been, totally and permanently disabled. The difficulty with plaintiff's case resides in the fact that the gap between his crisis in 1920 and his two months service in 1917 is too vaguely and inadequately bridged.

The district judge was right in his conclusion that the testimony offered more than fifteen years after the disability was supposed to have occurred had failed to meet the requirement that it must offer more than a basis for surmise and conjecture, had failed to make an issue for the jury. Wise v. U. S. (C. C. A.) 63 F.(2d) 307, 308; U. S. v. Hill (C. C. A.) 62 F.(2d) 1022; U. S. v. Howard (C. C. A.) 64 F.(2d) 533; Falbo v. U. S. (C. C. A.) 64 F.(2d) 948.

The judgment is affirmed.