No. 23,412.

G. H. TANNAHILL, *Appellee,* v. DEPOSITORS OIL AND GAS COMPANY, and THE SEAMANS OIL COMPANY, *Appellants.*

SYLLABUS BY THE COURT.

1. RULING ON DEMURRER TO PETITION—*Time in Which to Appeal.* Rule followed that a trial court's ruling on a demurrer to a petition cannot be reviewed unless an appeal is taken within six months from the time such ruling is made.

2. NEGLIGENCE—*Use of Defective Auto—Allegations of Petition.* Where an action charges negligence on the part of an employer, and is not founded upon the negligence of his employees for which the employer is liable, the want of allegations of negligence on the part of the employees gives no ground for an objection to the introduction of evidence.

3. SAME—*Rulings on Evidence—No Error.* Objections to the competency of evidence disclosed by the record examined, and not sustained.

4. SAME—*Personal Injuries—Demurrer to Evidence Properly Overruled.* The evidence to support a cause of action for damages occasioned by the operation of an automobile which was defective and dangerous to use examined, and held that the demurrer thereto was properly overruled.

5. SAME—*Defective Automobile Being Used in Owner's Business.* The evidence examined and held to show that at the time plaintiff was injured by the defective automobile it was being used by the owners' employees in pursuit of the owners' business.

6. SAME—*Instruction Properly Refused.* Instructions requested which would completely bar the plaintiff's right to recover unless the jury should find

Tannahill v. Oil & Gas Co.

negligence on the part of the employees operating the car and unless they were using it in the discharge of some duty for their employers, were properly refused.

7. SAME—*Instructions.* Instructions given examined, and *held* to contain nothing prejudicial to defendants.

8. SAME—*Owner of Defective Automobile—Liability for Damages for Permitting Its Use.* The owners of an automobile who knowingly permit it to be used on a public street by their employees when it is so greatly out of repair and in such a defective condition that it cannot be readily and effectively controlled and when it is prone to swerve and lurch from one side of the street to the other, are liable in damages to a person standing in the street and free from negligence himself, when such person is struck, knocked down, and injured by such defective automobile.

9. SAME. A Ford car having a bent front axle and bent radius rods and which swerves and lurches from one side of a street to the other when it is being propelled is a nuisance, and the law pertaining thereto is the ordinary rule governing the care and keeping of dangerous instrumentalities, and the owners of it are bound to take exceptional precautions to prevent its doing mischief to persons or property.

Appeal from Woodson district court; OSCAR FOUST, judge. Opinion filed January 7, 1922. Affirmed.

*G. R. Stephenson,* of Yates Center, *Jean P. Day,* and *Eben L. Taylor,* both of Oklahoma City, Okla., for the appellants.

*G. H. Lamb,* and *W. E. Hogueland,* both of Yates Center, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages caused through the operation of a defective and dangerous automobile.

The defendant corporations were engaged in gas and oil development in Woodson county. In this work they employed a number of men, and used a number of automobiles, one of which was a Ford car which was out of repair. Its front axle and radius rods were bent so that it could not be controlled. While in this defective condition the car continued to be used by the employees of defendants for some time, until one morning in April, 1919, some of the defendants' employees in the village of Vernon got into it to ride to their work out in the country. Heading westerly along the north side of a street running east and west, the car swerved to the south side of the street, thence back to the north side, and again swerved almost due south across the street and struck the plaintiff. He was standing by his own automobile watching one of his sons tinkering with it, when the defendants' car struck and knocked him down. His injuries were severe and perhaps permanent.

Plaintiff's action for damages charged negligence on the part of defendants in permitting their car while in a defective and dangerous condition to be used on the public highway.

"That at the time hereinafter mentioned, when said plaintiff was injured, the said defendants furnished their said employees with an old and out of repair automobile to transfer the said employees and supplies from place to place, well knowing that the same was out of repair and dangerous in this: That the same had a bent axle and the radius rods were bent and said car could not be controlled and kept in the road, but would run from one side of the road to the other and the drivers had no means of controlling the same.

"That while said car was in said condition, the said defendants, well knowing its condition, negligently permitted and furnished said car to its employees, . . . That the said employees aforesaid in attempting to pass along said street in said car were unable to control the same and said car left the beaten track and turned to the right angle and struck this plaintiff."

Defendants filed a demurrer which was overruled, and then answered with a general denial and a plea of contributory negligence.

Jury trial; verdict and judgment for plaintiff; defendants appeal.

The principal errors assigned will be noted in the order in which they are urged.

Defendants first address themselves to the insufficiency of plaintiff's petition. Their demurrer thereto was overruled on August 11, 1919. This appeal was not taken until December 11, 1920, which is altogether too late for review. (*Dyer v. Johnson*, 109 Kan. 338, syl. ¶ 1, 198 Pac. 944.)

The defendants' objections to the introduction of plaintiff's evidence are based upon the want of some allegation in plaintiff's petition stating that the accident happened while the car was being used in defendants' business. Some such allegation would be material if this action sought to hold the defendants for negligence on the part of their employees, but that is not the negligence here complained of. It was the negligence of the masters, not the negligence of the servants, that gives rise to this cause of action.

The next error urged pertains to the admission of testimony showing what defendants' superintendent, McLauren, said immediately after plaintiff was injured. The testimony, given by various witnesses, reads:

"A. When he got there he says, 'Mr. Tannahill I'm sorry this happened to you'; he said, 'I wouldn't have this happen for a thousand dollars'; he says, 'that's the last time that car will ever go out until it goes to the shop again' . . .

"A. McLauren said: 'I'm awfully sorry this happened, Mr. Tannahill'; and after they had gone, McLauren said to take the car put it in the shop and for nobody to run it until it was fixed up. . . .

"A. He said: 'I'm sorry this happened, rather give you a thousand dollars than to have this happen; don't know how bad, how sorry I am it hap-

pened and the car will be run in the garage and not used until in shape to run.' "

This evidence was competent to show that a responsible officer of defendants knew that the car was defective and dangerous to operate. Of course the sympathetic remarks of McLauren to the injured plaintiff had no such significance, but it cannot be discerned how their rehearsal could prejudice the defendants' cause before the jury.

Some other objections to plaintiff's evidence are presented, but they are not serious and require no discussion.

· Error is next assigned on the overruling of defendants' demurrer to the evidence. Plaintiff's cause of action was sufficiently well established to require its submission to a jury. At that stage of the trial, it was shown, if true, that the car's defective and dangerous condition was well known to one or more of the responsible officials of the defendants, that such condition of the car had existed for a long time, that it was continually in use, and frequently used by defendants' employees, and the negligence of defendants in permitting such a dangerous instrumentality to be used was well established—if the jury saw fit to give credence to the testimony. Neither the fact of plaintiff's injuries nor their extent, nor the amount of damages awarded, were seriously contested below, and these points are not contested here except as they may be governed by matters of law. Much of defendants' argument centers about the question whether the employees had authority to use the car on the morning of plaintiff's injury. That, it seems to us, was well established. They were accustomed to use it. The superintendent knew they were using it. On the morning of the accident, the driver could not crank the car and the superintendent cranked it for him. There was some evidence of a rule of the defendants that the common roustabout employees should not use the car, but any such rule was habitually disregarded. If the case were permitted to turn upon the question whether the employees were in their masters' service when the accident was established, that, too, although disputed, was shown by evidence. One employee was about to start to walk to his work, when the superintendent said: "Wait a minute and you can ride." It seems that when cars were available the roustabouts were permitted to ride in them and to use them, and when not, they walked. (*Snyder v. Eriksen,* 109 Kan. 314, 198 Pac. 1080.)

In *Phillips v. Armour & Co.*, 108 Kan. 596, 196 Pac. 245, the defendant, during a street-car strike, hired some trucks to transport its employees to and from the place of their employment. The defendant owed its employees no such duty, but it undertook that service for their benefit. Owing to the crowded condition of the truck, one of the employees had to sit on the end gate of the truck; it broke; and the employee was injured. He sued his employer. In the opinion affirming the judgment, this court said:

"Having taken upon itself the responsibilities of the transportation the defendant owed its employees the duty to inspect the instrumentalities used in it and to see that the traffic was as carefully conducted as if the vehicles had been owned by it or been driven by its foreman or other employees." (p. 598.)

And so here. Having permitted its employees to use this defective dangerous automobile in going to and from their work, the defendants cannot be heard to say that the employees were not in any sense in their service while driving the car nor until they arrived at the exact place where they were to labor.

The demurrer to the plaintiff's evidence was properly overruled.

Complaint is made because the trial court refused instructions which would have barred a recovery if at the time plaintiff was injured the defendants' car was being driven by an employee for his own purpose and not in discharge of some duty for defendants, etc.

There was no error in refusing these instructions. We have to repeat that this is not an action holding the employer, *respondeat superior*, for the negligence of his employee; and all the citations of authority connoted by the industry of defendants' counsel in support of that doctrine are beside the mark. Furthermore, the trial court was very liberal towards defendants and did in fact give two instructions (1 and last part of 3), which would have barred the plaintiff's recovery if the driver "was not engaged in operating the automobile in question in, about or on behalf of the business of the defendants." Under the facts of this case, plaintiff might complain of instructions thus limited, but not defendants; they were highly advantageous to them.

We have examined the instructions given. They contain some statements of good enough law that had little or naught to do with this lawsuit, and might have restricted unduly, perhaps, the plaintiff's right of recovery, but they certainly contain no error prejudicial to defendants.

Tannahill v. Oil & Gas Co.

The other assignments of error may all be considered as present-ing the question whether the verdict and judgment are contrary to law.· Indeed, that is the only important point in this lawsuit. All disputed questions of fact were settled by the verdict. Does the law impose.a liability on the owner of an automobile who knowingly permits it to be used on public streets when it is in such a defective condition that it cannot be effectively and readily controlled and is likely to get out of control and run into and injure persons law-fully using the public street or highway? It would be a· startling pronouncement for the court to hold that under such circumstances the owner is not liable. While an automobile in good mechanical condition is not a dangerous instrumentality, yet one which is so defective that it cannot readily be controlled is highly dangerous owing to its weight, power and speed; and the rule of law is thor-oughly established that the owner of an instrumentality of dan-gerous character is bound to take exceptional precautions to pre-vent its doing mischief to others. A Ford car having a bent front axle and bent radius rods is well known to be dangerous to operate; it is known to be liable to lurch or swerve in any direction except straight ahead. (*Rickel v. Railway Co.*, 104 Kan. 453, 458, syl. ¶ 3, 179 Pac. 550.) Such a car traveling on a public road is in effect a nuisance to other people lawfully using the highway. The defend-ants should have foreseen that its continued operation in its seriously defective condition was likely to cause an injury to some-body. (29 Cyc. 459, 460; 18 R. C. L. 789; 20 R. C. L. 51, 53.) Indeed, in this case, it was shown that some of the defendants' em-ployees had discussed the likelihood that this car in its existing de-fective condition would kill somebody. The owner of a defective automobile whose operation is likely to do damage to persons and property on the public highway is just as culpable as a railway company which permits a defective engine to be operated to the menace of persons or property lawfully on or near the right of way.

In *Walmsley v. Telephone Association*, 102 Kan. 139, 169 Pac. 197, it was said:

"The defendant was negligent in the maintenance of its telephone wire. . . . That some mishap was likely to occur to people riding and driving with customary loads on the highway, through the negligent manner of stringing the wire could have been anticipated. Damage of some sort was natural and probable, almost inevitable. . . . But the law does not say that if the particular injury arising from the negligence cannot be antici-pated a recovery cannot be had. That some damage, some injury, would

probably arise from the existing negligence and that it could reasonably have been expected is all that the law requires to justify a recovery." (Citing cases.) (p. 143.)

The record contains no error and the judgment is affirmed.