## CHERRY LAKE FARMS, Inc., v. TAYLOR.
### No. 8502.

Circuit Court of Appeals, Fifth Circuit.

Aug. 2, 1938.

572

O. O. McCollum, Charles Cook Howell and J. L. Doggett, Jr., all of Jacksonville, Fla., for appellant.

E. T. McIlvaine, of Jacksonville, Fla., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

This is a suit brought by J. H. Taylor, appellee, to recover damages for the accidental death of his son, Ernest Taylor, alleged to have been caused by the negligence of appellant, defendant below. Error is assigned to the denial of a motion for a directed verdict in favor of defendant.

The undisputed facts appearing from the record are as follows: Cherry Lake Farms, Inc., is a corporation organized to develop and manage an agricultural relief project under the Florida Emergency Relief Administration. It was engaged in developing the land and erecting mills and other works at Cherry Lake, Florida. Several hundred men were employed. Some of them, called homesteaders or clients, were given free lodging and meals. One of these was Eugene E. Williams, who was employed in driving a one and a half ton truck. The deceased, Ernest Taylor, was a boy between 16 and 17 years of age and Williams' brother-in-law. Ernest Taylor went to the Farms with the hope of getting work. He was there for about a week before the accident. In some unauthorized way he secured possession of a metal disc bearing the figures 223, which had been originally issued to a client or homesteader named Charles C. Fielder, but had not been reissued to Ernest Taylor, who had never been employed, was not on the pay rolls and not entitled to have it. By the use of this disc Ernest Taylor succeeded in occupying a bunk and getting his meals but he did not have an identification card, which was necessary for those purposes. Ernest Taylor made several trips on the truck driven by his brother-in-law and oc-

casionally helped him in his work. He could have been seen doing so by the officials of the corporation but that they saw him was denied by them. On September 23, 1935, he was on the truck operated by his brother-in-law when the fatal accident occurred, about six miles from Cherry Lake. The truck was empty and drawing two empty trailers. The truck was running on a straight stretch of concrete highway, at the rate of about 35 miles an hour when it ran over the side of the road, hit an obstruction and turned over. Ernest Taylor was so severely injured that he died in the hospital a few days thereafter. Shortly before the fatal trip the truck was thoroughly gone over in defendant's shop, which was in charge of a competent mechanic. The wheels were lined up, the steering gear tested and it was pronounced in good order before it was redelivered to Williams. The truck had a sticker on it saying, "No Riders" and a notice dated April 19, 1935, was posted in the yard. This notice had been brought to the attention of all the truck drivers, Williams included, and they had been notified to not carry passengers. So far as material, the notice was as follows:

"Subject: Passengers in Automobiles.

"In order that the Florida Emergency Relief Administration may not incur liability for personal injuries, persons traveling on official business are cautioned against transporting passengers who are not also engaged on official business. This applies to the use of both personally owned automobiles and those which are the property of the administration."

In substance, the complaint alleged that the deceased had been invited by defendant to ride on the truck, that the steering gear was defective and that the driver was negligent in operating the truck.

■ There was no evidence tending to show that Ernest Taylor had been invited to ride on the truck by anyone but his brother-in-law, Williams, who was violating the positive instructions of his employer in doing so and was not acting within the actual or implied scope of his authority.

■■ There was no evidence tending to show that the driver of the truck was negligent unless that resulted from the speed of the truck. A statute of Florida provides that the operation of motor vehicles of more than 5,000 and less than 16,000 pounds in weight on the public highways, outside of a city, town or village, in excess of 30 miles an hour, is prima facie evidence of reckless driving. Comp.Gen.Laws Fla. 1927, § 1318. This statute was considered by the Supreme Court of Florida in Florida Motor Lines, Inc., v. Ward, 102 Fla. 1105, 137 So. 163, and it was held it did not apply unless it were shown that the excessive speed was the proximate cause of the injury or had some causative connection. There was no evidence tending to show the weight of the truck but apparently it was assumed by the parties that it exceeded 5,000 pounds. There was no evidence tending to show that the rate of speed had anything to do with the accident. It had proceeded safely at that rate for about six miles. The evidence of the driver, who was the only person in a position to know, was that the accident was caused by the failure of the steering gear to properly function. Conceding, arguendo, that this was true, it is apparent that appellant had used reasonable care in endeavoring to make the truck mechanically safe and was not charged with notice that it was unsafe before the accident.

■ Considering that several hundred men were employed in the project and that their identities were so little known they required metal discs and identification cards to enable them to get subsistence and lodging, the fact that responsible officials of the company may have seen the deceased riding on the truck and occasionally doing some work would not be sufficient to support the conclusion that he was a passenger by the acquiescence of the employer of the driver.

■ The conclusion is inescapable that, in the circumstances shown, appellant was not derelict in performing any duty it owed to Ernest Taylor as to the safety of the truck and was not responsible to him for any negligence of the driver. No Florida case has been cited on this point by either party and we know of none but the rule is well settled by the weight of authority elsewhere. Dougherty v. Chicago M. & St. P. R. Co., 137 Iowa 257, 114 N.W. 902, 14 L.R.A.,N.S., 590, 126 Am.St.Rep. 282; Foster-Herbert Cut Stone Co. v. Pugh, 115 Tenn. 688, 91 S.W. 199, 4 L.R.A.,N.S., 804, 112 Am.St.Rep. 881; Liggett & Meyers Tobacco Co. v. De Parcq, 8 Cir., 66 F.2d 678, 679, and authorities cited in said cases.

■ There was no substantial evidence to go to the jury. It was error to deny the motion for a directed verdict. U. S. v. Howard, 5 Cir., 64 F.2d 533. It is unneces-

sary to discuss the other assignments of error.

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.